**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

——————————————————————x
                                                    :
IN RE: CHEERIOS MARKETING &        :      **MDL NO. 2094**
SALES PRACTICES LITIGATION            :
                                                    :      **ALL CASES**
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
                                                    :
——————————————————————x

**CONSOLIDATED AMENDED CLASS ACTION**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, by and through their attorneys, bring this class action on behalf of themselves, and on behalf of a class of all other similarly situated persons (the "Class"), including all persons who purchased Cheerios® cereals manufactured, sold and/or distributed by General Mills, Inc. ("General Mills").   Plaintiffs bring this action for compensatory, equitable, injunctive and declaratory relief against General Mills for violation of various state deceptive trade practice acts, breach of warranty and unjust enrichment.   Plaintiffs allege matters pertaining to themselves and their own acts, upon personal knowledge, and as to all other matters, upon information and belief, based upon the investigation undertaken by their counsel:

## I.   SUMMARY OF THE ACTION

1.     This action arises out of General Mills' uniform and deceptive representations claiming that certain of its Cheerios cereals can reduce cholesterol levels as well as reduce the risk of heart disease and certain forms of cancers, as well as its material omissions relating to these claims.

2.     In this regard, during the relevant time period, General Mills has deceptively marketed, advertised, packaged, labeled and otherwise promoted its Cheerios as lowering cholesterol and thereby preventing, mitigating or treating hypercholesterolemia and coronary heart disease and reducing the risk of some cancers, especially cancers of the stomach and colon. However, these claims were deceptive as they improperly portrayed Cheerios as having properties that reduce cholesterol, the risk of heart disease and the risk of certain cancers, irrespective of other important dietary considerations.   Moreover, General Mills knew or should have known, but failed to disclose or adequately disclose the following material facts, *inter alia*: 1) that diets rich in whole grain foods, such as Cheerios, should also be high in fiber-containing fruits and vegetables and low in saturated fat and cholesterol to help reduce the risk of heart disease; 2) that diets including whole grain foods should also be high in fiber-containing fruits

and vegetables to help reduce the risk of cancer; and 3) that General Mills was not authorized by the Federal Food and Drug Administration (the "FDA") to make its claims about the health benefits of Cheerios.

3.      General Mills' misrepresentations and omissions regarding the health benefits of Cheerios came to light following a warning letter sent to General Mills on May 5, 2009 ("Letter") from the FDA indicating that the FDA had reviewed the labeling for Cheerios® Toasted Whole Grain Oat Cereal and found serious violations of the Federal Food, Drug and Cosmetic Act (the "FDCA"), 21 U.S.C. § 301, *et seq.*

4.      The goal of General Mills' scheme has been and remains clear – to deceive consumers about the health benefits of Cheerios and to reap significant financial rewards through this unlawful conduct to the detriment of Plaintiffs and the Class. Through its deceptive scheme, General Mills reaped millions of dollars in profits that it otherwise would not have obtained and caused Plaintiffs and Class Members to expend money on products that they would not have purchased had they known the truth.

## II.   PARTIES

5.      Plaintiff Elsa Acevedo is a resident of the state of New Jersey. Throughout the class period, Plaintiff Acevedo purchased the original Cheerios from various stores in Bayonne, New Jersey.

6.      Plaintiff Hobin Choi is a resident of the state of California. Between December 2008 and June 2009, Plaintiff Choi purchased 4 to 5 boxes of the original Cheerios from retailers including Ralph's Grocery Store located at 17840 Ventura Boulevard, Encino, California 91316.

7.      Plaintiff Charity E. Huey is a resident of the state of California. During the class period, on at least a monthly basis, Plaintiff Huey purchased a variety of Cheerios cereals, including but not limited to, Cheerios Toasted Whole Grain Oat Cereal and the original Cheerios

from the Costco Wholesale Warehouse located at 450 10th Street, San Francisco, California 94103.

8.      Plaintiff Edward Myers is a resident of the state of New Jersey.  During the class period, on a roughly bimonthly basis, Plaintiff Myers purchased family packs of Honey Nut Cheerios and the original Cheerios from ShopRite and Pathmark stores in Weehawken, New Jersey.

9.      Plaintiff Jeffery Stevens is a resident of the state of New York.  Throughout the class period, Plaintiff Stevens regularly purchased original Cheerios from Waldbaums on Long Island, New York.

10.     Plaintiff Claire M. Theodore is a resident of the state of California.  In November 2008, May 2009, and September 2009, Plaintiff Theodore purchased Cheerios from the Pink Dot store located at 2499 Lincoln Boulevard, Venice, California 90291 and various Ralph's Grocery stores in Los Angeles, California.

11.     General Mills is a corporation organized and existing under the laws of Delaware, with its principal place of business at Number One General Mills Boulevard, Minneapolis, Minnesota 55426.  General Mills promotes, markets, distributes, manufactures and sells some of the world's largest food brands, including Cheerios, throughout the United States.  General Mills has conducted and continues to conduct business throughout the country by marketing, promoting, advertising, distributing and selling Cheerios through various stores nationwide.

12.     Despite the nationwide sales of General Mills' products, the most significant relationship between General Mills and Plaintiffs and Class Members centers in Minnesota, General Mills' long-time world headquarters.  General Mills launched advertising campaigns from Minnesota, including campaigns regarding Cheerios. General Mills' consumer services

department is in Minnesota and was therefore the location of General Mills' customer call center. Additionally, a significant number of General Mills' employees, including its CEO and former CEO, are located in Minnesota. In addition, in connection with the terms of use of General Mills' website, www.generalmills.com, which is used to reach out to Plaintiffs and Class Members, General Mills attempts to mandate the application of Minnesota law, noting that "Your access to the website as well as the terms and conditions and the agreement they create are governed and interpreted by the laws of the State of Minnesota." *See* http://www.generalmills.com/corporate/legal/legal.aspx.

13.    General Mills also has conducted and continues to conduct business in Minnesota by distributing for sale and selling Cheerios through various retailers located in Minnesota.

## III.    JURISDICTION AND VENUE

14.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332. The Class includes more than 100 individuals. Members of the Class are citizens of a state different from General Mills, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000.00, exclusive of interest and costs.

15.    Venue in this Court is proper pursuant to the October 9, 2009, Transfer Order issued by the United State Judicial Panel on Multidistrict Litigation and pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District and because General Mills: (a) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District; (b) does substantial business in this District and (c) is subject to personal jurisdiction in this District.

16.    This Complaint is intended to supersede the individual complaints presently on file by consolidating the allegations of those complaints into one consolidated complaint that is

the operative Complaint for all of the underlying claims asserted in this multi-district litigation. However, Plaintiffs in the transferred actions reserve their rights of remand to the Districts from which they were transferred at or before the conclusion of the pre-trial proceedings. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

## IV.   FACTUAL ALLEGATIONS

### A.   Cheerios

17.    General Mills promotes, markets, distributes, manufactures and sells a variety of Cheerios cereals, including the original Cheerios, Honey Nut Cheerios, MultiGrain Cheerios, Banana Nut Cheerios, Cheerios Crunch, Berry Burst Cheerios, Frosted Cheerios, Apple Cinnamon Cheerios, Fruity Cheerios and Yogurt Burst Cheerios.

18.    General Mills markets Cheerios to healthy people and people of all ages.  As indicated on General Mills' website, "Cheerios has been a family favorite for years – with good reason! Its wholesome goodness is perfect for toddlers to adults and everyone in between." http://www.cheerios.com/ourcereals/cheerios/cheerios_home.aspx.  As detailed below, the health benefits of Cheerios, as represented by General Mills in its marketing, advertising, packaging, labeling and other promotional materials, are a material factor in the promotion of Cheerios and have led directly to increased product sales, but are misleading and deceptive.

### B.   General Mills Misrepresents the Health Benefits of Cheerios

19.    General Mills has spent millions of dollars advertising and marketing the health benefits of Cheerios through a variety of media, including television, newspapers, magazines, and the Internet, in addition to the labels on the packaging of Cheerios boxes.

20.    For instance, in a nationwide print advertisement, General Mills represents in big, bold letters and numbers that "You could Lower Your Cholesterol 4% in 6 weeks."  The number 6 is in the center of the advertisement and is formed using individuals.  At the bottom of the

advertisement, General Mills then represents: "A study showed two 1 ½ cup servings daily for 6 weeks reduced bad cholesterol about 4% as part of a diet low in saturated fat and cholesterol."

21.    Similarly, the Principal Display Panel ("PDP") on the labeling of Cheerios boxes features a fanciful depiction of a heart that is approximately one-third of the PDP's total height. Within the heart the label states that consumption of Cheerios can lower cholesterol by "10% in one month" and "see back for details."  The 10% is in a typeface similar in size to that used on the PDP for the product name.  Just below the product name, the label states in slightly smaller typeface, "helps lower cholesterol."

22.    The label then states, on the lower left-hand portion of the PDP that: "Three grams of soluble fiber daily from whole grain oat foods, like Cheerios cereal, in a diet low in saturated fat and cholesterol, may reduce the risk of heart disease.  Cheerios cereal provides 1 gram per serving."

23.    The back panel of the original Cheerios label features in large typeface the word "WOW!" followed by the question, "I can help lower my cholesterol 10% in one month?"  In smaller typeface below, the label states that:

> A new study proves Cheerios' cereal plus a reduced calorie diet that is low in fat can help lower bad cholesterol about 10% in one month.  The foods you eat or don't eat, along with your lifestyle habits, can really make a difference in lowering your cholesterol. Just follow these daily steps for one month to help lower your cholesterol.

24.    Below that, "bulleted" by depictions of the cereal, are the statements: "Eat two 1 cup servings of' Cheerios cereal" and "Cut 500 calories from your diet."  A smaller copy of' the heart is depicted on the back panel with "10% in one month!" printed within.

25.    General Mills also states in Cheerios' advertising the following:  "Number of other leading cold cereals clinically proven to help lower cholesterol.  O."

26.    Additionally, prominently stated on General Mills' website are similar representations.  For example, on its website, General Mills states:  "Made with whole grain, Cheerios is the only ready-to-eat cereal clinically proven to lower cholesterol when eaten as part of a diet low in saturated fat and cholesterol."  http://www.generalmills.com/corporate/brands/brand.aspx?catID=53.

27.    General Mills also represents on its website that: "Our cereals can help lower your cholesterol!  As part of a heart healthy diet, the soluble fiber in Cheerios, Honey Nut Cheerios, and Berry Burst Cheerios can help reduce your cholesterol."  http://www.cheerios.com/forAdults/cholesterol/loweringcholesterol.aspx.

28.    Similarly, with respect to reducing the risk of heart disease, General Mills represents on its website that "Eating Cheerios each day, as part of a diet low in saturated fat and cholesterol, can help lower your cholesterol, and that could help reduce your risk of heart disease."  http://www.cheerios.com/ourcereals/cheerios/cheeriosandcholesterol.aspx.

29.    In addition, General Mills' television advertisements reinforce and repeat these health claims, including the deceptive claim that Cheerios can lower cholesterol 4% in six weeks.

30.    Moreover, General Mills also represents on its website, www.wholegrainnation.com, that eating Cheerios can reduce certain forms of cancer.  General Mills states: "Including whole grain as part of a healthy diet may …[h]elp reduce the risk of certain types of cancers.  Regular consumption of whole grains as part of, a low-fat diet reduces the risk for some cancers, especially cancers of the stomach and colon."

31.    All of the above uniform representations concerning the health benefits of Cheerios are false, misleading and likely to deceive the consuming public because they

misrepresent Cheerios' ability to reduce cholesterol, reduce the risk of heart disease and certain forms of cancer.

32.     This promotional campaign has had a direct impact on sales.  General Mills' CEO, Ken Powell, said during a March 18, 2009 conference call that General Mills' cereal sales rose 13% in the third quarter ending February 2009, helped in part by the marketing of Cheerios health benefits.  "Cheerios, which is the largest franchise in the category, is also one of the fastest-growing brands in the category."  Such statements indicate that General Mills recognized and intended that consumers such as Plaintiffs would attach importance to the health benefit claims contained on the packaging of Cheerios, in print, television, internet advertisements and on the packaging of Cheerios, where such claims were made.

**C.     General Mills' Deceptive Marketing, Advertising, Packaging and Labeling of Cheerios as Revealed by the FDA**

33.     On May 5, 2009, the FDA sent a warning letter to General Mills stating that it had reviewed the label and labeling for Cheerios® Toasted Whole Grain Oat Cereal and found serious violations of the FDCA, including but not limited to, improper claims regarding the reduction of cholesterol levels and the risk of heart disease and certain cancers.[1]  The Letter states that General Mills' Cheerios product bears the following claims on its label:

- "you can Lower Your Cholesterol 4% in 6 weeks"

- "Did you know that in ·just 6 weeks Cheerios can reduce bad cholesterol by an average of 4 percent?  Cheerios is ... clinically proven to lower cholesterol.  A clinical study showed that eating two 1 1/2 cup servings daily of Cheerios cereal reduced bad cholesterol when eaten as part of a diet low in saturated fat and cholesterol."

Letter, p. 1.

---

[1] A true and correct copy of the Letter is attached hereto as Exhibit 1 and incorporated herein by reference.

34. The Letter then notes that the above claims made by General Mills "indicate that Cheerios is intended for use in lowering cholesterol, and therefore in preventing, mitigating, and treating the disease hypercholesterolemia." *Id.* The Letter further notes that the claims indicate that "Cheerios is intended for use in the treatment, mitigation, and prevention of coronary heart disease through lowering total and "bad" (LDL) cholesterol". *Id.*

35. According to the Letter, the health benefits claimed by General Mills exceed those permitted for products that have not obtained FDA approval for marketing as a drug. The Letter states, in relevant part:

> Because of these intended uses, the product is a drug within the meaning of section 201(g)(1)(B) of the Act [21 U.S.C. §321(g)(1)(B)]. The product is also a new drug under section 201(p) of the Act [21 U.S.C. §321(p)] because it is not generally recognized as safe and effective for use in preventing or treating hypercholesterolemia or coronary heart disease. Therefore, under section 505(a) of the Act [21 U.S.C. §355(a)], it cannot be legally marketed with the above claims without an approved drug application.

*Id.* at 2.

36. The FDA has issued a regulation authorizing a health claim associating soluble fiber from whole grain oats with a reduced risk of coronary heart disease. *See* 21 C.F.R. 101.81. This regulation provides for the claim to include, as part of the health claim, that the substance reduces the risk of coronary heart disease through the intermediate link of lowering blood total and LDL cholesterol. *See* C.F.R. 101.81(d)(2)-(3). According to the Letter, the two claims that General Mills makes about lowering cholesterol are *not* made as part of the authorized claim but rather are presented "as separate, stand-alone claims through their location on the package and other label designed features." *Id.* As indicated in the Letter:

> The cholesterol claim that mentions the clinical study is on the back of the Cheerios box, completely separate from the health claim on the front label. Although the other cholesterol claim is on

> the same panel as the authorized health claim, its prominent placement on a banner in the center of the front label, together with its much large font size, different background, and other text effects, clearly distinguish it form the health claim in the lower left corner.

*Id.*

37.     Even if the cholesterol-lowering claims were part of the authorized claims, the FDA said that they would not qualify for inclusion with the authorized claim because the cholesterol-lowering claims state a specific reduction in risk – "you can Lower Your Cholesterol 4% in 6 weeks" – when the claim-specific requirements in the FDA regulations require that the claim *not* attribute any degree of risk reduction for coronary heart disease to diets that include foods eligible to bear the claim. *Id.*

38.     The FDA also found that General Mills "misbranded" its Cheerios products because such products contain unauthorized health claims in its labeling. *Id.* For instance,, the FDA determined that Cheerios is misbranded due to certain representations on General Mills' website, www.wholegrainnation.com. One improper representation is the following: "Heart healthy diets rich in whole grain foods, can reduce the risk of heart disease." *Id.* at 3. The Letter states that this language misbrands Cheerios because it has not been authorized either by regulation or under authority of the health claim notification provision of the FDCA. *Id.*

39.     The Letter states that in order for such a claim to meet the requirements of the FDCA, it must state that "diets low in saturated fat and cholesterol and high in fiber-containing fruit, vegetable, and grain products may reduce the risk of heart disease." *Id.* General Mills' website, however, "leaves out any reference to fruits and vegetables, to fiber content, and to keeping the levels of saturated fat and cholesterol in the diet low" and, therefore, "does not convey that all these factors together help to reduce the risk of heart disease and does not enable the public to understand the significance of the claim in the context of the total daily diet." *Id.*

40.     Additionally, the FDA states that claims linking the consumption of whole grain foods to a reduced risk of heart disease must state that diets that are rich in whole grain foods and other plant foods, and low in saturated fat and cholesterol may help reduce the risk of heart disease. *Id.* However, General Mills' statement on its website concerning whole grain foods only states that diets rich in whole grains can reduce the risk of heart disease, with no mention of other plant foods or of low saturated fat and cholesterol, as is required under the FDCA. *See id.*

41.     The Letter also found that General Mills misbranded Cheerios by making the following claim on its website regarding Cheerios' effect on reducing cancer, "Including whole grain as part of a healthy diet may …[h]elp reduce the risk of certain types of cancers. Regular consumption of whole grains as part of, a low-fat diet reduces the risk for some cancers, especially cancers of the stomach and colon." *Id.*

42.     The Letter states that although the FDA has issued a regulation authorizing a health claim associating fiber-containing grain products with a reduced risk of cancer, the claim on General Mills' website left out any reference to fruits, vegetables and fiber content, which is required under the FDCA. *Id.* at 4. The Letter then notes that General Mills' claim "does not convey that all these factors together help to reduce the risk of heart disease and does not enable the public to understand the significance of the claim in the context of the total daily diet" in violation of the FDCA. *Id.*

43.     Moreover, the Letter states that in order to make a health claim linking the consumption of whole grain foods to a reduced risk of certain cancers, the claim must state that "[d]iets rich in whole grain foods and other plant foods….may reduce the risk of….certain cancers." *Id.* The representation on General Mills' website is different from the authorized

claim in that it does not mention "other plant foods."  *Id.*  The Letter states that the claim is also improper because:

> by using the language "especially cancers of the stomach and colon" the claim on your website emphasizes the relationship between whole grain foods and stomach and colon cancer as compared to other cancers, suggesting a greater degree of risk reduction or stronger evidence for the relationship between whole grain foods and risk of those two cancers.

*Id.*

44.     The FDA noted that the Letter was not intended to be an "all-inclusive review of your products and their labeling" and that it is General Mills' "responsibility to ensure that all your products are in compliance with the Act and its implementing regulations."  *Id.*

45.     Steven Sundlof, director of the FDA's Center for Food Safety and Applied Nutrition, discussed the deceptive and improper claims in a recent interview, stating that "[w]e just believe that the labeling on this particular product has gone beyond what the science supports."[2]

**D.     The Impact of General Mills' Wrongful Conduct**

46.     As detailed above, General Mills has deceptively marketed, advertised, packaged, labeled and otherwise promoted its Cheerios as lowering cholesterol and thereby preventing, mitigating or treating hypercholesterolemia and coronary heart disease and reducing the risk of some cancers, especially cancers of the stomach and colon.  However, these claims were deceptive as they improperly portray Cheerios as having properties that reduce cholesterol, the risk of heart disease and the risk of certain cancers, irrespective of other important dietary considerations.  Moreover, General Mills knew or should have known, but failed to disclose or

---

[2] http://www.bloomberg.com/apps/news"pid=20601057&sid=akLaZ4Zwx6g0&refer=llome, as retrieved May 15, 2009.

adequately disclose the following material facts, *inter alia*:  1) that diets rich in whole grain foods, such as Cheerios, should also be high in fiber-containing fruits and vegetables and low in saturated fat and cholesterol to help reduce the risk of heart disease; 2) that diets including whole grain foods should also be high in fiber-containing fruits and vegetables to help reduce the risk of cancer; and 3) that General Mills was not authorized by the FDA to make its claims about the health benefits of Cheerios.

47.     Plaintiffs were misled by General Mills' marketing, advertising, packaging, labeling and other promotional materials touting the health benefits of Cheerios.  Plaintiffs purchased and used Cheerios during the Class Period and in doing so, read, considered and based their decisions to buy Cheerios in substantial part on the above-cited representations.  Those representations were a substantial factor in influencing Plaintiffs' decisions to purchase and eat Cheerios.

48.     As indicated by the increased sales of Cheerios and the statements made by Mr. Powell, General Mills understood that persons such as Plaintiffs would attach importance to the existence and truth of the representations made in deciding whether to continue to purchase Cheerios and would consider such objective statements of fact material.  The representations concerning Cheerios are material facts to consumers, including that Cheerios have properties that would reduce cholesterol, reduce the risk of heart disease and reduce the risk of cancer. However, General Mills' statements about Cheerios were misleading because, although Cheerios may contain whole grains, diets rich in whole grain foods should also be rich in fiber-containing fruits and vegetables and low in saturated fat and cholesterol to help reduce the risk of heart disease and cancer.  Indeed, as the FDA indicated in its Letter, Cheerios is "not generally

recognized as safe and effective for use in preventing or treating hypercholesterolemia or coronary heart disease." Letter, p. 2.

49.     As a result of the above misrepresentations and omissions of material fact, Plaintiffs and members of the Class either have or have likely been misled by General Mills' representations into purchasing and paying for a product that purportedly reduces cholesterol, reduces the risk of heart disease and reduces the risk of cancer irrespective of other important dietary considerations.  Plaintiffs and others either have or likely have been misled by General Mills into purchasing and paying for a product that is not generally recognized as effective for use in preventing or treating hypercholesterolemia, coronary heart disease or cancer.  Plaintiffs have thus suffered injury in fact and a loss of money or property in that they have been deprived of the benefit of their bargain and have spent money on Cheerios that lacked values, characteristics, uses or benefits they were led by General Mills to believe they had.

## V.     CLASS ACTION ALLEGATIONS

50.     Plaintiffs bring this class action claim pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs seek certification of the claims and certain issues in this action on behalf of all persons in the United States who purchased Cheerios for personal, family or household use during the class period (the "Class"), and/or such subclasses as the Court may deem appropriate.  The class period is defined as the period between the date General Mills first used the representations described above, as well as those similar to them, in the marketing, advertising, packaging, labeling and other promotions of Cheerios, to the present.

51.     Plaintiffs reserve the right to amend or modify their complaint and/or the Plaintiff Class definition in connection with meaningful discovery and/or a motion for class certification.

52.     General Mills' practices as detailed above were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class.  All

members of the Class were and are similarly affected by having purchased and used the Cheerios, and the relief sought herein is for the benefit of Plaintiffs and members of the Class.

53.     Members of the Class are so numerous and geographically dispersed that joinder of all Class Members is impracticable.  Based on the annual sales of Cheerios, the popularity of Cheerios, and General Mills' Removal Petition (Dkt #1) filed in the *Theodore v. General Mills*, No. 09-4620 (C.D. Cal. filed June 26, 2009) in which it stated that it had sold well in excess of $14,023,066 of Cheerios Toasted Whole Grain Oat Cereal during the class period in California alone, it is apparent that the number of consumers of Cheerios would be so large as to make joinder impossible and is in the tens of thousands of consumers.  Although the precise number and identities of Class Members are unknown to Plaintiffs, notice can be provided through a variety of means including publication, the cost of which is properly imposed upon General Mills.

54.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs has retained counsel competent and experienced in both consumer protection and class action litigation.

55.     The claims asserted by Plaintiffs in this action are typical of the claims of the members of the Class, as the claims arise from the same course of conduct by General Mills, and the relief sought is common.  The Class is ascertainable and there is a well-defined community of interests in the questions of law and/or fact alleged since the rights of each Class member were violated in a similar fashion based upon the General Mills' wrongdoing.  The injuries sustained by the Plaintiffs and the Class Members flow, in each instance, from a common nucleus of operative facts – the General Mills' wrongdoing.  In every case, Plaintiffs and Class

Members suffered uniform damages caused by their purchase of Cheerios produced, manufactured, distributed, and/or sold by General Mills.

56.     In addition, there are questions of law and fact common to the Class that exist that predominate over questions affecting only individual Class Members.  General Mills engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs and the Class Members.   Individual questions, if any, pale by comparison to the numerous common questions that predominate.  Such common questions include but are not limited to:

(a)     Whether General Mills' marketing, advertising, packaging, labeling and other promotional materials were deceptive;

(b)     Whether General Mills' marketing, advertising, packaging, labeling and other promotional materials constitute violations of the consumer protection laws asserted herein;

(c)     Whether General Mills breached express and/or implied warranties;

(d)     Whether General Mills was unjustly enriched;

(e)     Whether General Mills' conduct as set forth herein injured consumers, and if so, the extent of the injury;

(f)     Whether Plaintiffs and Class Members are entitled to an award of punitive damages; and

(g)     Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

57.     Certification of this class action is appropriate because the questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members.  This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims and provides substantial benefits.

58.     Absent a class action, it would be highly unlikely that Plaintiff or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed their expected recovery.

59.     Certification also is appropriate because General Mills acted or refused to act on grounds generally applicable to the Class, thereby making appropriate the relief sought on behalf of the Class as a whole.   Further, given the large number of consumers of Cheerios, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

60.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that such individual actions would engender.   The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might he argued with regard to the management of this class action.

**VI.     CAUSES OF ACTION**

**COUNT I**

**VIOLATION OF MINNESOTA CONSUMER FRAUD ACT**

61.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

62.     Plaintiffs bring this class action on behalf of themselves and all other members of the Class asserting claims under the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* ("CFA").

63.     The CFA prohibits the "act, use or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby …" Minn. Stat. § 325F.69.

64.     As set forth above, General Mills' acts and/or practices constitute fraud, false pretenses, false promises, misrepresentations, misleading statements as well as deceptive practices in violation of the CFA because, as explained herein, General Mills' made false and deceptive representations and omissions that promoted Cheerios as having properties that would reduce cholesterol, the risk of heart disease and the risk of certain cancers, irrespective of other important dietary considerations.   Such acts and practices have a capacity, tendency and/or likelihood to deceive reasonable consumers, as detailed above.

65.     General Mills' misrepresentations and omissions regarding Cheerios damaged Plaintiffs and members of the Class who would not have purchased Cheerios or paid as much for Cheerios absent General Mills' deceptive practices.

66.     The claims set forth herein benefit the public in that General Mills' misrepresentations and omissions have affected Plaintiff as well as thousands of consumers nationwide and the relief will benefit Plaintiff and members of the Class.

67.     As purchasers and consumers of Cheerios, Plaintiffs are entitled to and do bring this class action seeking all available remedies under Minn. Stat. § 8.31 subd. 3a, as they have suffered injury and a loss of money or property as a result of the acts and practices detailed above.

68.     Plaintiff and members of the Class are entitled to restitution and/or actual damages and/or equitable and injunctive relief, costs, and reasonable attorney fees pursuant to Minn. Stat. § 8.31 subd. 3a.

## COUNT II

## VIOLATION OF MINNESOTA UNLAWFUL TRADE PRACTICES ACT

69.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

70.     Plaintiffs bring this class action on behalf of themselves and all other members of the Class, asserting claims under the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09, *et seq.* ("MUTPA").

71.     Pursuant to Minn. Stat. § 325D.13, "[n]o person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

72.     As set forth above, General Mills misrepresented the true quality and ingredients of Cheerios by claiming that Cheerios have properties that would reduce cholesterol, the risk of heart disease and the risk of certain cancers, irrespective of other important dietary considerations.

73.     General Mills' misrepresentations and omissions regarding Cheerios damaged Plaintiffs and members of the Class who would not have purchased Cheerios or paid as much for Cheerios absent General Mills' deceptive practices.

74.     The claims set forth herein benefit the public in that General Mills' misrepresentations and omissions have affected Plaintiff as well as thousands of consumers nationwide and the relief sought will benefit Plaintiff and members of the Class.

75.     As purchasers and consumers of Cheerios, Plaintiffs are entitled to and do bring this class action seeking all available remedies under Minn. Stat. § 8.31 subd. 3a, as they have suffered injury and a loss of money or property as a result of the acts and practices detailed above.

76.     Plaintiff and members of the Class are entitled to restitution and/or actual damages and/or equitable and injunctive relief, costs, and reasonable attorney fees pursuant to Minn. Stat. § 8.31 subd. 3a and Minn Stat 325D.15.

## COUNT III

## VIOLATION OF THE MINNESOTA DECEPTIVE TRADE PRACTICES ACT

77.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

78.     Plaintiffs bring this class action on behalf of themselves and all other members of the Class, asserting claims under the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44 ("MDTPA").

79.     General Mills violated the MDTPA by engaging in the following practices prohibited by MDTPA § 325.D44 subd. 1 in transactions with Plaintiffs and members of the Class which were intended to and did cause Plaintiffs members of the Class to purchase Cheerios:

> (2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

> *     *     *

> (3) caus[ing] likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;

> *     *     *

- 20 -

(5) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

\*          \*          \*

(7) represent[ing] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

\*          \*          \*

(9) advertis[ing] goods or services with intent not to sell them as advertised;

\*          \*          \*

(13) engage[ing] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

80.      As set forth above, General Mills engaged in deceptive trade practices by making representations and omissions that promoted Cheerios as having properties that would reduce cholesterol, the risk of heart disease and the risk of certain cancers, irrespective of other important dietary considerations.   Such acts and practices have a capacity, tendency and/or likelihood to deceive reasonable consumers, as detailed above.

81.      As the manufacturer and distributor of Cheerios, General Mills possesses specialized knowledge regarding the content and effects of the ingredients contained in Cheerios. This information was not known by or available to the public.   As a result, General Mills knew, or should have had reason to know, or recklessly disregarded that, its representations and omissions were false, misleading and deceptive.

82.      Plaintiffs and members of the Class read and justifiably relied on the accuracy of the representations in General Mills' marketing, advertising, packaging, labeling and other promotional materials in purchasing Cheerios.

83.     General Mills' misrepresentations and omissions regarding Cheerios damaged Plaintiffs and members of the Class who would not have purchased Cheerios or paid as much for Cheerios absent General Mills' deceptive practices.

84.     As purchasers and consumers of Cheerios, Plaintiffs are entitled to and do bring this class action seeking all available remedies under Minn. Stat. § 325D.45, including, but not limited to, attorneys' fees and costs.

**COUNT IV**

**VIOLATION OF THE MINNESOTA FALSE
STATEMENT IN ADVERTISING ACT**

85.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

86.     Plaintiffs bring this class action on behalf of themselves and all other members of the Class, asserting claims under the Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67 ("MFSA").

87.     The MFSA prohibits "any person, firm, corporation or association" from causing "to be made, published, disseminated, circulated, or placed before the public…." an advertisement which "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."

88.     As set forth above, General Mills' marketing, advertising, labeling and other promotional materials made representations about Cheerios that were untrue, deceptive or misleading.

89.     General Mills' representations and omissions in its marketing, advertising, labeling and other promotional materials damaged members of the Class who would not have purchased Cheerios or paid as much for Cheerios absent General Mills' representations.

90.     The claims set forth herein benefit the public in that General Mills' misrepresentations have affected Plaintiff as well as thousands of consumers nationwide and the relief sought will benefit Plaintiff and members of the Class.

91.     As purchasers and consumers of Cheerios, Plaintiffs are entitled to and do bring this class action seeking all available remedies under Minn. Stat. § 8.31 subd. 3a, as they have suffered injury and a loss of money or property as a result of the acts and practices detailed above.

92.     Plaintiff and members of the Class are entitled to restitution and/or actual damages and/or equitable and injunctive relief, costs, and reasonable attorney fees pursuant to Minn. Stat. § 8.31 subd. 3a.

## COUNT V

## VIOLATION OF STATE CONSUMER PROTECTION LAWS

93.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

94.     Each of the Plaintiffs brings this Count on his or her own behalf under the law of the state in which he or she purchased Cheerios produced by General Mills on behalf of: (a) all other persons who purchased Cheerios produced by General Mills in the same state as Plaintiffs purchased such products; and (b) all other persons who purchased Cheerios in states having similar consumer protection laws.

95.     Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased Cheerios produced by General Mills.

96.     The consumer protection laws of the state in which each Plaintiff and member of the Class purchased Cheerios declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful.

97.     Forty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class actions.   These statutes are found at:

(a)     Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

(b)     Arizona Consumer Fraud Act, A.R.S. § 44-1522, *et seq.*;

(c)     Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

(d)     California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

(e)     Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

(f)     Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

(g)     Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

(h)     District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28 3901, *et seq.*;

(i)     Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

(j)     Georgia  Fair Business Practices Act, §10-1-390 *et seq.*;

(k)     Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et. seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;

(l)     Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

(m)     Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

(n)     Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.*;

(o)     Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.*;

(p)     Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.*;

(q)     Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*,

(r)     Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

(s)     Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

(t)     Michigan Consumer Protection Act, §§ 445.901, *et seq.*;

(u)     Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.*; Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*; Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09, *et seq.*; and Minnesota False Statements in Advertising Act, Minn. Stat. § 325F.67;

(v)     Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.*;

(w)     Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

(x)     Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.*;

(y)     Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

(z)     Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*;

(aa)   New Hampshire Consumer Protection Act,  N.H. Rev. Stat. § 358-A:1, *et seq.*;

(bb)   New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.*;

(cc)   New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.*;

(dd)   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*;

(ee)   North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq.*;

(ff)   Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

(gg)   Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

(hh)   Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

(ii)   South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

(jj)   South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1, *et seq.*;

(hh)   Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

(ll)   Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.*;

(mm)   West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

(nn)   Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

98.   The Cheerios manufactured, advertised, marketed, promoted, packaged, labeled, distributed and sold by General Mills constitute products to which these consumer protection laws apply.

99.   In the conduct of trade or commerce regarding their manufacturing, advertising, marketing, promotion, packaging, labeling, distribution and sale of Cheerios, General Mills

engaged in one or more unfair or deceptive acts or practices, including but not limited to, *inter alia*: disseminating or causing to disseminate deceptive representations that claim that Cheerios have properties that reduce cholesterol, reduce the risk of heart disease and reduce the risk of cancer, irrespective of other important dietary considerations, as set forth in detail above.

100.    General Mills' marketing, advertising, packaging, labeling and other promotional materials were false, untrue, misleading, unfair, deceptive and/or likely to deceive.

101.    General Mills' marketing, advertising, packaging, labeling and other promotional materials were also unlawful in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, in that they violated federal food labeling law, as set forth above, and thereby further violated the California Sherman Food, Drug and Cosmetics Law, Cal. Health & Saf. Code, §109875, *et seq.*, which incorporates "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the [FDCA]" as "the food labeling regulations of this state."  Cal. Health & Saf. Code § 110100(a).

102.    General Mills knew or should have known that the representations and omissions in their marketing, advertising, packaging, labeling and other promotional materials were false, untrue, misleading, unfair, deceptive, likely to deceive and/or otherwise unlawful.

103.    General Mills used or employed such unfair, deceptive and unlawful acts or practices with the intent that these Plaintiffs and members of the Class rely thereon.

104.    To the extent required by the above-cited consumer protection laws, Plaintiffs and the other members of the Class did so rely.

105.    Each Plaintiff and member of the Class purchased Cheerios produced by General Mills who deceptively represented the qualities, characteristics and/or benefits of such products.

Plaintiffs and members of the Class would not have purchased Cheerios or paid as much for Cheerios but for the unfair, deceptive and unlawful acts of General Mills detailed above.

106.   As a result of General Mills' conduct, Plaintiffs and members of the Class suffered injury in fact, a loss of money or property and/or were damaged.

107.   General Mills' conduct showed complete indifference to or conscious disregard for the rights and safety of others such that an award of punitive and/or statutory damages is appropriate to the extent permitted under the consumer protection laws cited above.

## COUNT VI

## BREACH OF EXPRESS WARRANTY

108.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

109.   Each of the Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Cheerios produced by General Mills on behalf of: (a) all other persons who purchased Cheerios produced by General Mills in the same state; and (b) all other persons who purchased such products in states having similar laws regarding express warranty.

110.   General Mills' representations that Cheerios can reduce cholesterol levels as well as reduce the risk of heart disease and certain forms of cancers irrespective of other important dietary considerations are affirmations by General Mills that Cheerios would reduce cholesterol as well as the risk of heart disease and certain forms of cancer irrespective of other important dietary considerations.

111.   The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the good shall conform to the promise and to the description.

112.     General Mills' representations regarding the Produce are made to Plaintiffs and members of the Class at the point of purchase, are part of the description of the goods and the bargain upon which they are offered for sale and purchased by Plaintiffs and members of the Class.

113.     In addition or in the alternative, General Mills' representations were made to induce Plaintiffs and members of the Class to rely on such representations, and Plaintiffs and members of the Class did so rely on said representations as a material factor in his/her decision to purchase Cheerios.   Plaintiffs and the members of the Class would not have purchased Cheerios or paid as much for Cheerios but for these representations and warranties.

114.     The Cheerios produced by General Mills did not, in fact, meet with descriptions General Mills made about the health benefits of Cheerios.

115.     At all times relevant to this action, General Mills falsely represented the characteristics of Cheerios in breach of these express warranties.

116.     At all times relevant to this action, General Mills made false representations in breach of their express warranties and in violation of state express warranty laws, including:

a.     Ak. St. § 42.02.313.

b.     Ariz. Rev. Stat. Ann. § 47-2313.

c.     Ark. Code Ann. § 4-2-313.

d.     California Commercial Code § 2313.

e.     Colo. Rev. St. § 4-2-313.

f.     Conn. Gen. Stat. Ann. § 42a-2-313.

g.     D.C. Stat. § 28:2-313.

h.     Haw. Rev. Stat. § 490:2-313.

i.     Ind. Code § 26-1-2-313.

j.     Kansas Stat. Ann. § 84-2-313.

k.     La. Civ. Code. Ann. Art. 2520

l.     11 Maine Rev. Stat. Ann. § 2-313.

m.     Mass. Gen. Laws Ann. 106 § 2-313.

n.     Minn. Stat. Ann. § 336.2-313.

o.     Miss. Code Ann. § 75-2-313.

p.     Missouri Rev. Stat. §400.2-313.

q.     Mont. Code Ann. 30-2-313.

r.     Neb. Rev. Stat. § 2-313.

s.     Nev. Rev. Stat. §104.2313.

t.     N.H. Rev. Stat. § 382-A:2-313.

u.     N.J. Stat. Ann. 12A:2-313.

v.     N.M. Stat. Ann. § 55-2-313.

w.     N.Y. U.C.C. Law § 2-313.

x.     N.C. Gen. Stat. Ann. § 25-2-313.

y.     Okla. Stat. Ann. Tit. 12A, § 2-313.

z.     Or. Rev. Stat. § 72.3130.

aa.     Pa. Stat. Ann. Tit. 13, § 2313.

bb.     R.I. Stat. § 6A-2-313.

cc.     S.C. § 36-2-313.

dd.     S.D. Cod. Laws. § 57A-2-313.

ee.     Tenn. Code Ann. § 47-2-313.

ff.     Tex. Bus. & Com. Code Ann. § 2.313.

gg.     Ut. Code Ann. § 70A-2-313.

hh.     Vt. Stat. Ann. § 2-313.

ii.     Wa. Ann. 62A.2-313.

jj.     W. Va. Code § 46-2-313.

kk.     Wyo. Stat. 34.1-2-313.

117.     The above statutes do not require privity of contract in order to recover for breach of express warranty.

118.     As a result of General Mills' conduct, Plaintiffs and members of the Class were damaged.

119.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed General Mills on notice thereof.

## COUNT VII

### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE

120.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

121.    Each of the Plaintiffs brings this Count on his/her own behalf under the law of the state in which he/she purchased Cheerios produced by General Mills on behalf of: (a) all other persons who purchased Cheerios produced by General Mills in the same state; and (b) all other persons who purchased such products in states having similar laws regarding implied warranties of merchantability and fitness for a particular purpose.

122.    Plaintiffs and members of the Class purchased Cheerios produced by General Mills for the ordinary and/or particular purpose of Cheerios, *i.e*, to reduce cholesterol levels, as well as the risk of heart disease and certain forms of cancer.  Plaintiffs and the members of the Class relied on General Mills' skill and judgment to select and furnish suitable goods for that purpose.

123.    General Mills held itself out as possessing, and did, possess expertise, skill and knowledge superior to consumers including Plaintiffs and members of the Class, who had a right to rely thereon.

124.    By marketing the Cheerios for sale, General Mills impliedly warranted that Cheerios were, in fact, fit for the ordinary purpose for which such products of that description are used.

125.    By the acts set forth in detail above, General Mills warranted that Cheerios provided health benefits, but omitted, suppressed, and withheld material information contrary or otherwise relevant to such claims.   Plaintiffs and the members of the Class bought Cheerios relying on General Mills' skill, judgment and representations.

126.    At the time of the sales, General Mills had reason to know the particular purpose for which their goods were being offered and acquired, and that Plaintiffs and the members of the Class were relying on General Mills' skill and judgment to select and furnish suitable goods for that purpose.   Accordingly, there was an implied warranty that the goods were fit for this purpose.

127.    However, General Mills breached this warranty implied at the time of sale by providing goods that are/were unsuitable for the purpose for which they were made.

128.    As such, the Cheerios produced and sold by General Mills were not fit for their ordinary and/or particular purpose.

129.    General Mills' conduct breached its implied warranties regarding Cheerios sold under state implied warranty laws including:

a.    Ak. St. § 45.02.314 and § 45.02.315.

b.    Cal. Comm. Code § 2314.

c.    Co. Rev. Stat. § 4-2-314 and § 4-2-315.

d.    6 Del. C. § 2-314 and § 2-315.

e.    D.C. Stat. § 28:2-314 and § 28:2-315.

f.    Haw. Rev. Stat. § 490:2-314 and § 490:2-315.

g.    Ind. Code § 26-1-2-314 and § 26-1-2-315.

h.    La. Civ. Code Ann. Art. 2524.

i.    11 Maine Rev. Stat. Ann. § 2-314 and § 2-315.

j.    Md. Com. Law Code Ann. § 2-314 and § 2-315.

k.    Mass. Gen. Laws Ann. 106 § 2-314 and § 2-315.

l.    Mich. Comp. Laws Ann. 440.2314 and 440.2315.

| m. | Minn. Stat. Ann. § 336.2-314 and §336.2-315. |
| n. | Miss. Code Ann. § 75-2-314 and § 75-2-315. |
| o. | Missouri Rev. Stat. 400.2-314 and 400.2-315. |
| p. | Mont. Code Ann. 30-2-314 and 30-2-315. |
| q. | Neb. Rev. Stat. § 2-314 and § 2-315. |
| r. | Nev. Rev. Stat. 104.2314 and 104.2315. |
| s. | N.H. Stat. Ann. § 382-A:2-314 and § 382-A:2-315. |
| t. | N.J. Stat. Ann. 12A:2-314 and 12A:2-315. |
| u. | N.M. Stat. Ann. § 55-2-314 and § 55-2-315. |
| v. | N.D. Stat. 41-02-31 and 41-02-32. |
| w. | Okla. Stat. Ann. tit. 12A, § 2-314 and § 2-315. |
| x. | Pa. Stat. Ann. tit. 13, § 2314 and §2315. |
| y. | S.C. § 36-2-314 and § 36-2-315. |
| z. | S.D. Cod. Laws. § 57A-2-314 and § 57A-2-315. |
| aa. | Tex. Bus. & Com. Code Ann. § 2.314 and § 2.315. |
| bb. | Ut. Code Ann. § 70A-2-314 and § 70A-2-315. |
| cc. | Va. Code Ann. § 8.2-314 and § 8.2-315. |
| dd. | W. Va. Code § 46-2-314 and § 46-2-315. |
| ee. | Wyo. Stat. 34.1-2-314 and 34.1-2-315. |

130.    These states do not require privity of contract in order to recover for breach of implied warranty.

131.    As a result of General Mills' breach of their implied warranties, Plaintiffs and members of the Class have been damaged.

132.    Within a reasonable time after they knew or should have known of such breach, Plaintiffs, on behalf of themselves and members of the Class, placed General Mills on notice thereof.

**COUNT VIII**

**UNJUST ENRICHMENT**

133.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

134.    Each of the Plaintiffs brings this claim for unjust enrichment on his or her own behalf under the law of Minnesota.  To the extent that the Minnesota law of unjust enrichment is not applied, in the alternative, Plaintiffs assert claims for unjust enrichment under any and all other applicable States' laws.

135.    Plaintiffs and other members conferred benefits to General Mills by paying money for Cheerios.

136.    General Mills knowingly accepted and retained the benefits conferred.

137.    Under the circumstances, it would be inequitable for General Mills to retain the above-described benefits.

138.    As a result of General Mills' unjust enrichment, Plaintiffs and members of the Class suffered losses in an amount to be determined at trial and seek full disgorgement, restitution, and/or other equitable monetary relief for General Mills' unjust enrichment.

**VII.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class Members request that the Court enter an order or judgment against General Mills including the following:

A.    Certification of the action as a class action pursuant to Rule 23(b)(3) or 23(b)(2) of the Federal Rules of Civil Procedure, and appointment of Plaintiffs as class representatives and their counsel of record as class counsel;

B.    Damages in the amount of monies paid for General Mills' Cheerios and/or other consequential or incidental damages;

C.   Statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

D.   Pre-judgment and post-judgment interest on such monetary relief;

E.   Equitable monetary relief as may be necessary to disgorge and/or restore monies received by General Mills as a result of the deceptive conduct alleged herein;

F.   A declaration that General Mills' conduct as alleged herein was unlawful and an injunction barring General Mills from continuing the unlawful conduct described herein;

G.   The costs of bringing this suit, including reasonable attorneys' fees; and

H.   All other relief to which Plaintiffs and members of the Class may be entitled at law or in equity.

DATED:   January 4, 2010                    Respectfully submitted,

**WARD & OLIVO**

By:   s/ Maureen Abbey
Maureen Abbey
382 Springfield Avenue
Summit, NJ  07901
Telephone: (908) 277-3333
Facsimile: (908) 277-6373


Joe R. Whatley
Patrick J. Sheehan
Elizabeth Rosenberg
**WHATLEY DRAKE & KALLAS, LLC**
1540 Broadway, 37th Floor
New York, NY  10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077


Andrew S. Friedman
Elaine A. Ryan
Patricia N. Syverson

**BONNETT FAIRBOURN FRIEDMAN**
**& BALINT, P.C.**
2901 N. Central Avenue, Suite 1000
Phoenix, AZ  85012
Telephone: (602) 274-1100
Facsimile: (602) 798-5825

Todd D. Carpenter
**BONNETT FAIRBOURN FRIEDMAN**
**& BALINT, P.C.**
600 W. Broadway, Suite 900
San Diego, CA  92101
Telephone: (619) 756-6978
Facsimile: (602) 798-5860

Timothy G. Blood
Thomas J. O'Reardon II
**BLOOD HURST & O'REARDON, LLP**
600 B Street, Suite 1550
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101

Alan Mansfield
**THE CONSUMER LAW GROUP**
9466 Black Mountain Road, Suite 225
San Diego, CA  92126
Telephone: (619) 308-5034
Facsimile: (888) 341-5048

Daniel E. Becnel, Jr.
**BECNEL LAW FIRM LLC**
106 West Seventh Street
P.O. Drawer H
Reserve, LA  70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445

Michael A. London

**DOUGLAS & LONDON**

111 John Street, 14th Floor

New York, NY  10038

Telephone: (212) 566-7500

Facsimile: (212) 566-7501

John G. Emerson

**EMERSON POYTNER**

830 Apollo Lane

Houston, TX  77058

Telephone: (281) 488-8854

Facsimile: (281) 488-8867

Scott E. Poynter

Christopher D. Jennings

**EMERSON POYTNER**

500 President Clinton Avenue, Suite 305

Little Rock, AK  72201

Telephone: (501) 907-2555

Facsimile: (501) 907-2556

W. Lewis Garrison

William L. Bross

Gayle L. Douglas

**HENINGER GARRISON DAVIS, LLC**

2224 First Avenue North

Birmingham, AL  35203

Telephone: (205) 326-3336

Harold M. Hewell

**HEWELL LAW FIRM**

105 West F Street, Second Floor

San Diego, CA  92101

Telephone: (619) 235-6854

Howard Rubinstein

914 Waters Avenue, Suite 20

Aspen, CO  81611

Telephone: (832) 715-2788

Robert Jigarjian

**JIGARDIAN LAW OFFICE**

128 Tunstead Avenue

San Anselmo, CA  94960

Telephone: (415) 341-6660

Scott Wm Weinstein

**MORGAN & MORGAN, P.A.**

12800 University Drive, Suite 600

Fort Myers, FL  33907

Telephone: (239) 433-6880

Facsimile: (239) 433-6836

Jerrold S. Parker

Andres F. Alonso

David B. Krangle

**PARKER WAICHMAN ALONSO LLP**

111 Great Neck Road

Great Neck, NY  11021

Telephone: (516) 466-6500

Facsimile: (516) 466-6665

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

_____s/ Maureen Abbey_____